IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
99 JUN -2 PM 2: 1
U.S. DISTRICT COU
N.D. OF ALABAMA

| | |
|---|---|
| VERONICA JOHNSON, | ) |
| Plaintiff | ) ) ) |
| vs. | ) CASE NO. CV98-HGD-0152-NE |
| AUTOMATIC SCREW MACHINE PRODUCTS COMPANY, INC., | ) ) ) ) |
| Defendant | ) |

ENTERED
JUN - 2 1999

## MEMORANDUM OPINION

The above-entitled civil action is before the undersigned magistrate judge on the motion for summary judgment filed by defendant, Automatic Screw Machine Products Company, Inc. (hereinafter referred to as "ASMP"). The parties have consented to the jurisdiction of the magistrate judge in accordance with the provisions of 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73. [Document #15].

This action was commenced on January 23, 1998, when plaintiff, Veronica Johnson, filed a complaint alleging sex and race discrimination and retaliation in violation of Title VII and race discrimination in violation of 42 U.S.C. § 1981. By order entered June 24, 1998, the Court, in response to a motion to dismiss filed by the defendant, dismissed all of plaintiff's claims as set out in her amended complaint other than a claim of retaliation in relation to a sexual harassment complaint made by plaintiff against certain employees of ASMP, and a claim of race discrimination [Document

#14]. By stipulation, Ms. Johnson subsequently dismissed her claims of race discrimination, leaving only the retaliation claim for disposition.

ASMP filed a motion for summary judgment regarding plaintiff's remaining claim on March 10, 1999 [Document #25]. Plaintiff filed a response on April 13, 1999 [Document #30]. A reply to plaintiff's response was filed by the defendant on April 21, 1999 [Document #36], and the matter is now before the court for consideration.

## Summary Judgment Standard

In deciding whether to grant or deny a motion for summary judgment, a court must "view all the evidence and all factual inferences reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1285 (11th Cir. 1997) (citation omitted). Summary judgment is proper if the pleadings, depositions, and affidavits show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

## FACTUAL BACKGROUND

The plaintiff, Veronica Johnson, claims that the defendant, ASMP, retaliated against her in violation of 42 U.S.C. § 2000e-3(a), after she complained about an incident she perceived to be sexual harassment by another ASMP employee.

Ms. Johnson was hired as a temporary employee by ASMP on January 6, 1997, through AJ & Associates, Inc., an employment service that supplied temporary employees to ASMP on a regular

basis. On March 12, 1997, she complained to ASMP's Manager of Human Resources, Cathy Chiles, of perceived sexual harassment by co-employees, Ronnie Patterson and Floyd Morgan. She alleged that on February 26, 1997, she was being trained to use a machine by Patterson when Morgan asked Patterson to inform plaintiff what would happen if she broke his machine. According to Ms. Johnson, Patterson told her that if she broke his machine that he would "tie her up and have his way with her." Plaintiff states further that on February 27, 1997, she asked Patterson if she could leave work early, to which he responded that she'd "have to be tied up early, then." Ms. Johnson alleges that, after she complained about this conduct, Patterson would repeatedly sit down and stare at her while she worked, walk by her and state words to the effect that "she ain't nothing but an old liar," and bump her chair while she worked.

On March 26, 1997, plaintiff complained that someone had scratched the words "niger bitch" into her car while it was parked at ASMP. In addition, she states that, after her initial complaint, Morgan moved her from light work to a heavier machine requiring a higher production level and was abusive toward her when instructing her on the new machine. She also asserts that on April 25, 1997, Morgan moved her to a job requiring heavy lifting. As a result, she was injured on the job, necessitating a visit to the hospital and her placement on light duty by her physician.

The plaintiff claims that she repeatedly complained about this conduct to Cathy Chiles but that Chiles never took sufficient prompt, remedial action to stop the harassment. On May 16, 1997, plaintiff was fired or denied access to the ASMP facility.

Evidence reflects that after Ms. Johnson voiced her initial complaint about Patterson's comments, an investigation was performed by the Manager of Manufacturing, Jonathan Long. Floyd Morgan denied any knowledge of the incident. However, Ronnie Patterson admitted that he made

3

the statement attributed to him but contended that both he and Ms. Johnson knew he was joking. [Patterson Aff. at 2; Long Aff. at 3]. ASMP management strongly advised both Patterson and Morgan that there was no place in the workplace for these kinds of statements, that harassment in any form was a very serious matter to ASMP, and that it is clearly stated in ASMP's policy that harassment would not be tolerated and could result the loss of their jobs. Both were reprimanded and warned again that a repeat of such conduct would cost them their jobs. [Long Aff. at 3].

Ms. Johnson testified that, after she filed her complaint, Mr. Patterson did the following acts of alleged harassment:

    1. Either the same day as her complaint or a few days later, Patterson stated to another person, loud enough for plaintiff to hear, that she was a liar and a troublemaker, or something to that effect. [Johnson Depo. at 65-66]

    2. Patterson bumped her chair twice with a wheelbarrow. However, she was not hurt by this action. On one occasion when this occurred, he apologized. She testified that she never reported this incident to anyone except her sister. [*Id.* at 63-64]

    3. Patterson would stare at her while she worked. [*Id.* at 65].

On March 26, 1997, plaintiff complained to Ms. Chiles that she discovered as she was leaving work that someone had scratched the word "niger bitch" on the door of her automobile. [Chiles Aff. at 4, 5]. Ms. Johnson stated that she "feels like" Patterson did this damage but admitted that she has no proof that anyone at ASMP did it. [Johnson Aff. at 68-69]. Plaintiff also complained to Ms. Chiles on April 1, 1997, that she was verbally harassed by Floyd Morgan. At the request of Ms. Chiles, she wrote out a statement of what had happened. It reflects that Morgan upbraided plaintiff for writing down an incorrect department number and machine number on an item she was working

4

on and told her that, if she didn't know how to do something, to ask somebody. [Chiles Aff., Exhibit D; Johnson Aff. at 116].

Defendant ASMP asserts that plaintiff was terminated for excessive absences. The testimony of the defendant's witnesses reflects that, between January 6 and May 10, 1997, plaintiff had 38 absence occurrences at ASMP. [Chiles Aff. at 9]. Defendant also asserts that, during plaintiff's first 90 days of employment with ASMP, she missed 176½ hours of work, including 80½ hours missed prior to February 26, 1997, the date of Ronnie Patterson's first remark to plaintiff.

Plaintiff was questioned at her deposition about some of her absences. She stated at that time that she did not know how many days she was absent from work in March, but acknowledged that she worked a couple of days in both the first and second weeks of April, but that after April 25, 1997, she never returned to work. [Johnson Depo. at 88, 92]. When asked why she was absent from work on some Saturdays, she stated "Well, right now I can't say. I don't remember. Maybe-I really don't remember what was going on then." [Johnson Depo. at 115-116]. When asked, "But you do remember that sometimes you were supposed to work and you just turned up missing?" she replied, "I wouldn't just say I turned up missing. I mean, I don't know what was going on. Anything could have happened. Like when my grandmother was sick on a Saturday, I didn't go or was in the hospital or had died, I didn't go." [*Id.*]

A calendar tracking plaintiff's absences kept by Cathy Chiles reflects that plaintiff missed four days, including one Saturday, in January 1997. It shows that she had partial or complete absences from ASMP on nine days in February 1997, including three Saturdays, and on 10 days in March 1997, including three Saturdays. These records also reflect that Ms. Johnson had absences from work on April 2, 4, 5, and 7, 1997. According to ASMP's records, plaintiff also missed 5½ hours of work on

April 25, 1997, and all eight hours of work on April 28, 1997. It does not reflect any absences on April 29 or 30, 1997 However, it does reflect that plaintiff was absent for her entire shift for every day from May 1 to May 10, 1997, except for 5½ hours worked on May 5, 1997.

After ASMP filed its motion for summary judgment and stated therein that it had terminated Ms. Johnson for excessive absences and not for any discriminatory purpose, she submitted a reply that included an affidavit by her asserting that the calendar kept by Ms. Chiles is "completely false." In that affidavit she states that she did not miss any work in January, March or April 1997, until she was injured on the job on April 25. [Johnson Aff.]. She further states that in February 1997, the only days she was absent were approximately four days missed due to the death of her grandmother. [*Id.*]. Ms. Johnson stated that as a result of her injury on April 25, 1997, she thereafter missed several days of work. [Johnson Depo. at 92]. She states that when she first attempted to return to work, on May 5, 1997, she was unable to do her assigned tasks because of the effects of medication prescribed as a result of her injury. [Defendant's Exhibit 5]. Plaintiff states that, on that day, she provided her supervisor, Mr. Thurman Moore, with a doctor's statement, left work continuing her medical leave, and did not offer to return to work until May 16, 1997. On May 16, she was advised that she could not come back to work because she had been absent too often. [*Id.* at 98-99; Johnson Aff.].

## DISCUSSION

The only issue to be determined is whether plaintiff has presented an issue of material fact regarding her claim of retaliation. To establish a *prima facie* case of retaliation, the plaintiff must show: (1) a statutorily protected expression; (2) an adverse employment action; and (3) a causal link between the protected expression and the adverse action. *Maniccia v. Brown*, 171 F.3d 1364, 1369

6

(11th Cir. 1999); *Sullivan v. National Railroad Passenger Corp.*, 170 F.3d 1056, 1059 (11th Cir. 1999). The causal link requirement under Title VII must be construed broadly; "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Olmsted v. Taco Bell Corp.*, 141 F.3d 1457, 1460 (11th Cir. 1998) (quoting *E.E.O.C. v. Reichhold Chemicals, Inc.*, 988 F.2d 1564, 1571-72 (11th Cir. 1993)). Once the plaintiff makes out a *prima facie* case, "the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action." *Raney v. Vinson Guard Service, Inc.*, 120 F.3d 1192, 1196 (11th Cir. 1997) (quoting *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993)). If the defendant offers legitimate reasons, the presumption of retaliation disappears. *Id.* The plaintiff then must show that the employer's proffered reasons for taking the adverse action were actually a pretext for prohibited retaliatory conduct. *Sullivan*, 170 F.3d at 1059.

It is undisputed that Ms. Johnson has met the first two elements of her *prima facie* case of retaliatory discrimination, i.e., that she engaged in statutorily protected conduct (reporting alleged sexual harassment) and suffered an adverse employment action (termination). The dispute centers on whether plaintiff has put forth evidence that, when taken in the light most favorable to the non-moving party, could allow a jury to find by a preponderance of the evidence that plaintiff has established a causal link between her report of alleged sexual harassment and her termination and that ASMP's proffered legitimate reason for the employment action (excessive absences) is a pretext for an illegal discriminatory purpose. Issues of fact and sufficiency are properly reserved for the jury. The only issue to be considered by the judge at summary judgment is whether the plaintiff's evidence has placed a material fact at issue. *Hairston*, 9 F.3d at 921.

## Causal Link

As noted, the "causal link" may be established by evidence that the protected action and the adverse employment action are not totally unrelated. *Olmsted*, 141 F.3d at 1460. Plaintiff's brief, submitted in response to the defendant's motion for summary judgment, apparently assumes that a *prima facie* case exists because she only addresses the causal link factor in passing and, instead, spends most of her brief attacking plaintiff's asserted legitimate reasons for terminating plaintiff. However, a review of the evidence submitted, even when viewed in the light most favorable to plaintiff, reflects that this link has not been established.

The one item of proof of the causal link between plaintiff's protected activity and her firing put forth by the plaintiff is the fact that her termination occurred within two months of her complaint of alleged sexual harassment by Ronnie Patterson. Though offered as proof of pretext, the court also will consider certain evidence proffered by plaintiff as circumstantial proof that the causal link exists. This includes plaintiff's claim that her automobile was defaced with a racial slur, that the defendant provided a response to the EEOC contradictory to its current defense that it fired plaintiff for excessive absences, and that the calendar provided by Cathy Chiles reflecting Ms. Johnson's absences from ASMP is fabricated.

In *Donnellon v. Fruehauf Corporation*, 794 F.2d 598 (11th Cir. 1986), the Court stated that the short period of time between the filing of the discrimination complaint and the plaintiff's discharge (one month) was, in that case, evidence that "belie[d] any assertion by the defendant that the plaintiff failed to prove causation." *Id.* at 601. However, several district courts have reviewed this case and concluded that, under the particular facts of *Donnellon*, the timing of the plaintiff's discharge was sufficient to establish the causal link. They state that the timing element alone is not sufficient to

8

establish the causal link required for a *prima facie* case. *See, e.g., Booth v. Birmingham News Co.*, 704 F.Supp. 213 (N.D.Ala.), *aff'd*, 864 F.2d 793 (11th Cir. 1988); *Smith v. Beverly Health and Rehabilitation Services*, 978 F.Supp. 1116, 1132 (N.D.Ga. 1997); *Stafford v. True Temper Sports*, 1997 WL 88250, *5 (N.D.Miss. February 19, 1997); *Peters v. Board of Regents/Georgia Southern University*, 1992 WL 512344, *5 (N.D.Ga. April 8, 1992); *Hollins v. Hoechst Celanese Corp.*, 1991 WL 355020, *3 (S.D.Ala. August 13, 1991).

The Court in *Booth*, in reference to the statement in *Donnellon* regarding timing, stated "[i]f form is exalted over substance, this language might lead one to believe that the expiration of a short time alone can create an inference of a causal link. . . . If timing alone, considered *in vacuo*, is sufficient to establish [a causal link] under all circumstances, a plaintiff's burden of production would indeed be light unless the action were delayed for a number of years." *Booth*, 704 F.Supp. at 215-16.

Similarly, the record in the instant action is virtually devoid of any evidence of discriminatory intent, other than the timing of plaintiff's termination. In fact, the record reflects that, as soon as plaintiff made her complaint, the defendant took action. It investigated the claim, interviewed those alleged to be involved, reprimanded them and took steps to ensure that there would be no further incidents of that sort.

In addition, there is no evidence that plaintiff ever told anyone in management at ASMP about the retaliatory actions of Ronnie Patterson which she alleges occurred after her complaint. Though testifying that Patterson bumped her chair with a wheelbarrow on two occasions, plaintiff admitted that the only person she told about this incident was her sister. [Johnson Depo. at 65]. There is also no evidence in the record that she told anyone about her claims that Patterson called her a liar or

troublemaker or that he supposedly stared at her while she worked. Her only reference to retaliation occurred in a note she handed Cathy Chiles on March 28, 1997. That note states:

> To Whom it May Concern,
>
> Do (sic) to the retaliation experienced on 3/26/97, I want a formal internal of sexual harassment and retaliation. As I have previously reported to you, I have been sexually harassed by Ronnie, please do something so I can work in a environment free of sexual harassment and retaliation.
>                                     Sincerely,
>                                     Veronica Johnson

[Chiles Aff., Exhibit A] (sic).

The reference to "3/26/97" is obviously a reference to the vandalism of Ms. Johnson's automobile. This occurred outside the ASMP facility, and there is no proof that the defendants were involved in this action, had any knowledge as to the perpetrator, or condoned it in any way. In fact, ASMP performed an investigation after the incident, speaking with at least eleven employees who either worked in the area of the plant from which Ms. Johnson's car could be observed or had taken their breaks at the back of the plant where they could see her car. No one had any information as to how, when or by whom the damage to Ms. Johnson's car had been done. [Chiles Aff. at 6]. Thus, this incident provides no evidence to link plaintiff's complaint of sexual harassment with her termination.

Plaintiff also claims she was retaliated against by the "switching" of her jobs. She asserts that she was "taken off a job where I could do three hundred an hour and put on a job where I have to do six hundred or seven hundred an hour." [Johnson Depo. at 100]. However, plaintiff acknowledged in her deposition that her job required her to move from place to place and to work at different jobs as needed during the same day. There is no evidence in the record that Ms. Johnson was assigned

10

any work not normally assigned to an auxiliary employee such as herself nor that she ever complained to anyone at ASMP that her assigned work was too hard. Thus, the change in jobs does not provide any evidence of the requisite causal link.

Plaintiff's only other cited incident of alleged retaliation involves an incident where she claims Floyd Morgan exhibited an "attitude" of retaliation. However, by her own testimony plaintiff admits that there was only one such incident. Morgan's alleged act of retaliation was chastising plaintiff when she wrote down some information incorrectly and instructing her that, in the future, if she did not know the correct way to do something, she should ask someone. [Johnson Depo. at 117-18; Defendant's Exhibit 3, 5]. This complaint was investigated by Cathy Chiles for ASMP. Ms. Chiles states that she did not take any action against Mr. Morgan because she confirmed that his comment to plaintiff concerned a mistake she had made on the job and did not suggest any racial or sexual animus. [Chiles Aff. at 8]. Even assuming that Morgan's comment was made in a rude manner, this does not indicate a link between plaintiff's complaint and her termination.

Plaintiff also alleges that the defendant provided a response to the EEOC contradictory to its current defense that it fired plaintiff for excessive absences, and that the calendar provided by Cathy Chiles reflecting Ms. Johnson's absences from ASMP is fabricated. These claims simply are not borne out by any evidence in this case. A review of the evidence does not reflect conflicting statements regarding the reason for plaintiff's termination. The defendant's EEOC response dated October 7, 1997, states in pertinent part as follows:

> Attached hereto as Exhibit E is a copy of Ms. Johnson's work record for the time she worked at Automatic. The notation on the calendar of "A," followed by a number, indicate the days on which Ms. Johnson was absent and the number of hours of scheduled work time during which she was absent. Since the time she was hired, Ms.

11

>Johnson had a series of attendance problems. Nevertheless, it was
>Ms. Johnson's decision to discontinue her employment at Automatic;
>she was not fired.

[Defendant's Exhibit 5].

Cathy Chiles states in her affidavit that after Ms. Johnson was absent from work for an extended period of time in May 1997, Chiles called her and asked if she planned to return to work and Johnson indicated she did not. She avers that, thereafter, she notified AJ & Associates that Ms. Johnson should not be returned to work at Automatic because of her attendance problem. [Chiles Aff. at 10]. Thus, it appears to the court that plaintiff's claim that the defendant offered inconsistent testimony is without merit. Whether Ms. Johnson was "fired" for excessive absences or terminated when she failed to return to work after an extended period of time is merely an argument over semantics. Factually, the information related to the EEOC by the defendant in its October 7, 1997, response is the same as that which it has presented in its defense in the case at bar. Therefore, there is no conclusion to be drawn from this that in any way implies a causal link between Ms. Johnson's complaint and her termination.

Plaintiff asserts that Cathy Chiles' calendar is fraudulent. In her response to defendant's motion for summary judgment, plaintiff asserts that "Cathy Chiles *never* informed the EEOC she terminated Johnson's employment as described in her notes ... Once a federal lawsuit ensued Cathy Chiles stated absenteeism was the problem and was able to 'discover'[1] a calendar evidencing such conduct." [Document #30, Response of Plaintiff to Defendant's Motion for Summary Judgment at 2]. As noted above, this assertion simply is not correct. Indeed, though plaintiff failed to include the

---

[1] The use of the word "discover," contained within quotation marks makes it clear that plaintiff is inferring that this document was manufactured by defendant after the commencement of this lawsuit.

12

above-referenced "Exhibit E," originally attached to the defendant's EEOC response in October 1997, to her Exhibit 5, when she filed her response to the defendant's summary judgment motion, a reading of the body of the defendant's EEOC response makes it clear that the missing attachment is the same calendar attached as Exhibit F to the affidavit of Cathy Chiles submitted in support of defendant's motion for summary judgment filed in March 1999. Thus, the claim that this item was manufactured *after* the commencement of the lawsuit is unfounded.[2] The defendant's EEOC response occurred on October 7, 1997, several months before plaintiff filed her lawsuit and well before the defendant filed its motion for summary judgment.

In addition to her now-discredited claim that the defendant's Manager of Human Resources, Cathy Chiles, manufactured the plaintiff's attendance calendar after the filing of the lawsuit, the plaintiff has submitted her affidavit wherein she claims that she did not miss any work in January, March or April 1997, until she was injured on the job on April 25. [Johnson Aff.]. She further states that in February 1997, the only days she was absent were approximately four days missed due to the death of her grandmother. [*Id.*].

Though this assertion as to attendance is submitted by plaintiff as evidence of pretext, if the undersigned magistrate judge were to consider this claim to be true, it could also be construed as circumstantial evidence of a link between plaintiff's complaint of sexual harassment and her termination. This would create an issue of material fact sufficient for plaintiff to avoid summary judgment for failure to establish a necessary element of a *prima facie* case of retaliation.

---

[2] The failure of plaintiff's counsel to include this document as an attachment to her Exhibit 5, in view of the assertion in brief that the document was created after the institution of this lawsuit, leaves one with the impression that this omission was deliberate.

13

In considering a motion for summary judgment, or reconsidering a grant of summary judgment, the general rule is that a district court must consider all the evidence before it and cannot disregard a party's affidavit merely because it conflicts to some degree with an earlier deposition. *Kennett-Murray Corp. v. Bone*, 622 F.2d 887 893 (5th Cir. 1980). However, the law in this circuit is that "[w]hen a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." *Van T. Junkins and Associates, Inc. v. U.S. Industries, Inc.*, 736 F.2d 656, 657 (11th Cir. 1984). When this occurs, the court may disregard the affidavit as a sham. *Id.* This rule is applied sparingly because of the harsh effect it may have on a party's case. *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1530 (11th Cir. 1987). The Eleventh Circuit has stated "[t]o allow every failure of memory or variation in a witness' testimony to be disregarded as a sham would require far too much from lay witnesses and would deprive the trier of fact of the traditional opportunity to determine which point in time and with which words the . . . affiant . . . was stating the truth." *Id.* (quoting *Tippens v. Celotex Corp.*, 805 F.2d 949, 953-54 (11th Cir. 1986). A court must find some inherent inconsistency between an affidavit and a deposition before disregarding the affidavit. *Id.* If no inherent inconsistency exists, the general rule applies that allows an affidavit to create a genuine issue even if it conflicts with earlier testimony in the party's deposition. *Id.* (quoting *Kennett-Murray Corp.*, 622 F.2d at 893).

It appears to the undersigned magistrate judge that plaintiff's affidavit is inconsistent with her earlier deposition testimony. The determination to be made, however, is whether the affidavit contradicts "clear answers to unambiguous questions." *Van T. Junkins and Associates, supra.*

In her deposition testimony, plaintiff stated that she did not know how many days she was absent from work in March, but acknowledged that she only worked a "couple of days" in both the first and second weeks of April, and that, after April 25, 1997, she never returned to work. [Johnson Depo. at 88, 92]. When asked why she was absent from work on some Saturdays, she stated, "Well, right now I can't say. I don't remember. Maybe-I really don't remember what was going on then." [Johnson Depo. at 115-116]. When asked, "But you do remember that sometimes you were supposed to work and you just turned up missing?", she replied, "I wouldn't just say I turned up missing. I mean, I don't know what was going on. *Anything could have happened.* Like when my grandmother was sick on a Saturday, I didn't go or was in the hospital or had died, I didn't go." [*Id.*] (emphasis added).

In her affidavit, Ms. Johnson states *unequivocally* that the calendar kept by Ms. Chiles is "completely false." In that affidavit, plaintiff states that she did not miss any work in January, March or April 1997, until she was injured on the job on April 25. [Johnson Aff.]. She further states that in February 1997, she only missed approximately four days due to the death of her grandmother. [*Id.*].

Without the affidavit of plaintiff contradicting Ms. Chiles' testimony and the evidence of plaintiff's absences as reflected in the calendar, plaintiff cannot make the requisite causal connection between her harassment complaint and her termination sufficient to make out a *prima facie* case of retaliation nor can she show or even raise an inference that defendant's stated legitimate reason for her termination is pretextual. As noted above, plaintiff's claim that the calendar kept by Ms. Chiles was created after the institution of the lawsuit is itself a false statement, and plaintiff knew or should

15

have known it was false since the calendar was provided to plaintiff in defendant's response to her EEOC complaint in October 1997, several months before the filing of her lawsuit.

In addition, the differences in Ms. Johnson's deposition testimony and her affidavit cannot be explained as mere memory lapses. If, as plaintiff claims in her affidavit, she has a clear memory that she missed *no* work days in January, March or April (until her April 25 injury), then this directly contradicts her deposition testimony that she only worked a couple of days in each of the first two weeks of April. In addition, plaintiff's affidavit testimony that she missed only four days of work in February, due to the death of her grandmother, directly contradicts her deposition testimony that she missed work on some occasions for reasons she could not recall *and* because her grandmother was sick or in the hospital, *in addition to* missing days when she died. If, as plaintiff claims in her affidavit, she missed *no* workdays from the day she started work with ASMP in January 1997 up to April 25, except for four days after her grandmother's death, she should have had no difficulty recalling that fact and so stating during the deposition. Instead, she stated that she only worked for a couple of days in each of the first two weeks in April and could not remember how many days she had missed in March or exactly why she had missed them.

Under the totality of the circumstances, the court finds that the affidavit submitted by plaintiff is a sham. The undersigned magistrate judge believes that all the facts and circumstances reflect that this affidavit contains intentionally false statements designed to create a genuine issue of material fact where none otherwise exists. Therefore, the affidavit will not be considered by the court in deciding whether to grant or deny defendant's motion for summary judgment.

16

CONCLUSION

Based on the above findings of fact, the undersigned magistrate judge concludes that plaintiff has failed to show a causal link between her protected activity and her termination. Therefore, she has failed to make out a *prima facie* case of retaliation. Assuming, without finding, that plaintiff *has* established a *prima facie* case of retaliation, the court further finds that the defendant has provided evidence of a legitimate, non-retaliatory reason for plaintiff's termination (excessive absences). The undersigned further finds that the plaintiff has failed to raise any inference that defendant's stated legitimate reason is actually a pretext for discrimination. Therefore, defendant's motion for summary judgment is due to be granted. A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 2nd day of June, 1999.

HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

17